UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00503

ELAINE MATTHEWS                                                                                    Plaintiff,

v.

JESSICA BROWN ROBERTS                                                                    Defendant.

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Jessica Brown Roberts's Motion for Summary Judgment. (Docket No. 68.) Plaintiff Elaine Matthews has responded. (Docket No. 74.) This matter is now ripe for adjudication. For the reasons that follow, Roberts's Motion will be GRANTED.

## BACKGROUND

On May 20, 2013, Matthews filed a Complaint against Roberts, the County Attorney of Meade County, Kentucky. Matthews's Complaint demanded both injunctive relief and monetary damages as a result of Roberts's alleged misuse of her elected office.

Specifically, the Complaint centers on Matthews's desire to protest Broadbent Wildlife Sanctuary ("the Sanctuary"), a business owned by Mary Ann Tobin and located on U.S. Highway 60 in Guston, Meade County, Kentucky, and Matthews's subsequent arrest, which she alleges was in retaliation for this protest. Since February 2012, Matthews has protested the Sanctuary's alleged mistreatment of a whitetail deer known as Briana ("Briana"). Matthews describes a deep affection for Briana, having bonded with the animal. For many months, Matthews sat in a lawn chair along U.S. 60 with signs describing Briana's mistreatment, some of which include objectionable language. (*See* Docket No. 24 at 2.) Matthews has filed a number of

lawsuits and motions arising out of these circumstances; previous filings describe her widespread concerns and allow for a fuller understanding of the facts at hand.

On May 19, 2013, Matthews encountered Meade County Deputy Sheriff Brian Haag in the course of her protesting. According to Matthews, Haag threatened to cite Matthews for criminal trespass unless she removed herself, her vehicle, and her signs from the roadside. Matthews alleges that Haag claimed to have acted on the orders of Roberts, (Docket No. 1 at 2); Haag's affidavit contradicts this contention, (*see* Docket No. 68-4).

According to Roberts, her office received numerous complaints regarding Matthews's activities. (Docket No. 68-5 at 1.) She therefore inquired with the Kentucky Department of Highways ("KDH") as to Matthews's right to protest on the right-of-way. KDH personnel informed her that citizens cannot protest within highway right-of-ways unless they have applied for and received a permit to do so, and that Matthews had done neither. (Docket No. 68-5 at 1-2.) Roberts communicated this information to the Meade County Sheriff's Department. (Docket No. 68-5 at 2.) Roberts claims to have had no contact with Deputy Haag before he traveled to Matthews's protest site on May 19, 2013. (Docket No. 68-5 at 2.)

Roberts then deposed Kevin Blain of the KDH on October 21, 2013, in an effort to confirm the procedure to obtain a permit for right-of-way activities. Blain testified that any person, including Matthews, wishing to access the right-of-way must complete an Application for Encroachment and be granted a permit. Blain testified that Matthews had not received such a permit and would not be granted access to the right-of-way. (Docket No. 68-6.)

On October 30, 2013, after reviewing a Criminal Complaint against Matthews filed by Tobin, Meade County District Judge Harold Goff found that probable cause existed to believe that Matthews had committed third degree criminal trespass. After Goff signed an arrest

warrant, Matthews was arrested and booked in the Meade County Detention Center. (Docket No. 45 at 1.) As a condition of her release, Matthews agreed not to enter Meade County except to appear in court. (Docket No. 45 at 1.) It is undisputed that Roberts did not issue an arrest warrant for Matthews, nor did she place nonfinancial conditions upon her release.

Matthews now urges the Court to restrain Roberts from "interfering" with her right to protest at her chosen site along U.S. 60. In her Amended Complaint, Matthews alleges that Roberts wrongly processed the criminal complaint and issued an improper arrest warrant in order to stop her from exercising her First Amendment right to protest. (Docket No. 45 at 2.) She further contends that Roberts had prior knowledge that Judge Goff would condition Matthews's release on her agreement to refrain from entering Meade County. (Docket No. 45 at 2.) Finally, she explains that the stifling of her right to protest is particularly distressing to her as it exacerbates the childhood abuse and trauma that she survived. (Docket No. 1 at 1.)

**STANDARD**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive

determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). A "material" fact is one whose resolution affects the outcome of the lawsuit. *Lenning v. Commerical Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). Moreover, no genuine issue of material fact exists when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, a factual dispute that "is merely colorable or is not significantly probative" will not defeat a properly supported motion for summary judgment." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The essential question is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The party moving for summary judgment has the initial burden of informing the court of the basis of its motion and identifying portions of the record that demonstrate the absence of a genuine dispute regarding material facts and must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Failure to prove an essential

element of a claim renders all other facts immaterial. *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

Once the moving party has satisfied this burden, the nonmoving party may not "rest upon its mere allegations or denials of the opposing party's pleadings," *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010) (citation omitted), nor may it "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Rather, the opponent of the motion must point to specific facts in affidavits, depositions, or other factual material demonstrating "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the nonmoving party cannot meet her burden of proof after sufficient opportunity for discovery, summary judgment is proper. *Celotex*, 477 U.S. at 322-23.

Furthermore, federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore exhaustively all potential claims of a *pro se* plaintiff," as this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278.

It is against these standards that the Court reviews the following facts.

## DISCUSSION

**I.      Matthews's Amended Complaint**

As an initial matter, the Court considers Roberts's Motion to Strike Plaintiff's Amended Complaint (Docket No. 47), to which Matthews has responded, (Docket No. 49). Roberts argues that because Matthews failed to file a motion requesting the Court's leave to file her "Verified Amended Complaint," this filing is impermissible and must be stricken.

Federal Rule of Civil Procedure 15(a)(2) explains that outside of the Rule 15(a) twenty-one days period, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The Court notes that Matthews requested no such leave. However, abundant authority establishes a lenient standard for evaluating the pleadings of *a pro se* plaintiff.

> The judicial tendency is to disregard the deficiencies of a lengthy, unorganized complaint, particularly in a case in which a dismissal with leave to replead probably would not result in a substantially better drafted or more illuminating pleading. This reluctance on the part of the federal courts to dismiss for deviation from the short-and-plain statement standard understandably manifests itself most predominately and most frequently when the plaintiff is appearing pro se.

Wright and Miller, Federal Practice and Procedure: Civil 3d § 1217.

Although a district court is not required to conjure allegations on a litigant's behalf, the United States Supreme Court has unanimously held that a *pro se* plaintiff's pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines* 404 U.S. at 520. Furthermore, Rule 15(a)(2) itself advises that "[t]he court should freely give leave when justice so requires."

For these reasons, the Court denies Roberts's Motion to Strike. (Docket No. 47.) The Court will construe Docket No. 45 as both a motion for leave to file an amended complaint and

6

as an Amended Complaint itself. Finally, the Court will consider Robers's Motion for Summary Judgment to encompass the contents of both the initial and amended complaints.

## II. Elements of a First Amendment retaliation claim

The Court will first consider the heart of Matthew's claims: that Roberts violated her First Amendment rights by inferring with her protest of Briana's treatment. The Court must determine whether Matthews has alleged sufficient facts that, taken as true for purposes of Roberts's Motion, would satisfy the three elements of a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. In order to establish a First Amendment retaliation claim, a plaintiff must establish:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

### a. Matthews engaged in protected conduct.

First, to succeed on a retaliation claim, a plaintiff must allege that she "was engaged in a constitutionally protected activity." *Bloch,* 156 F.3d at 678). Matthews contends that she engaged in protected activity by voicing her opinion regarding Briana's treatment, speech that she characterizes as her civic and religious duty. Although the Court makes no judgment as to the legitimacy of Matthews's convictions, it notes the Supreme Court's teaching that speech regarding "matters of public concern . . . is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (internal quotation marks omitted). "Speech deals with matters of public concern when it can be fairly

7

considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 131 S.Ct. 1207, 1216 (2011) (internal quotation marks admitted). "A statement's arguably 'inappropriate or controversial character . . . is irrelevant to the question whether it deals with a matter of public concern.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 387 (1987)).

Of course, Matthews's choice of where and when to protest is not beyond regulatory reach but is "subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). However, the Court need not consider the validity of such restrictions for purposes of the instant analysis and will assume that Matthews has stated sufficient facts to satisfy the first *Bloch* element.

### b. Roberts took no adverse action against Matthews and therefore caused no injury.

Secondly, a plaintiff must allege that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Bloch*, 156 F.3d at 678. As discussed above, Matthews contends that Roberts was one of many public officials who deprived her of her right to protest—specifically, she alleges that Roberts took adverse action against her by ordering her arrest. The injuries that she alleges were caused by this adverse action include her arrest, incarceration, and the bond conditions to which she agreed. "[A]rrest is particularly suited to chill this [constitutionally protected] conduct." *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) (citing *Bloch*, 156 F.3d at 679-80).

However, the second part of this element—causation—presents a fatal obstacle to Matthews's case. To survive summary judgment, Matthews's allegations must plausibly

establish that Roberts was legally responsible for Matthews's arrest. She must, therefore, establish both cause in fact and proximate cause.

"Cause in fact is typically assessed using the 'but for' test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than it did." *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 1997). Matthews cannot demonstrate that but for Roberts's allegedly commanding Meade County law enforcement personnel to arrest her, she would have avoided arrest. Although Matthews claims that Roberts directed Meade County law enforcement officials to arrest her, Matthews's telling of the facts lacks a direct link to the alleged deprivation. She has not demonstrated that Roberts caused the constitutional injury she claims.

First, Matthews alleges that Roberts told her that she must cease protesting or face arrest. However, as this Court concluded in ruling on a similar motion in a parallel proceeding, the pleadings do not support an inference that a county attorney can establish county policy to regulate protest along a state highway.

> A county attorney's statutory duties include the duties to represent the county's interest in litigation and to give legal advice to county officers. Ky. Rev. Stat. Ann. § 69.210. The statute explicitly provides that "when so directed by the fiscal court" the county attorney shall, among other things, defend the county in all civil actions, § 69.210(1). Because these provisions either retain final authority within the fiscal court or are otherwise silent on the issue, there is no basis for concluding the county attorney possesses final policymaking authority – a point which reflects the tradition that an attorney acts not as a principal but as the agent of the principal.

*Matthews v. Roberts*, 2013 WL 17736466, at *3 (W.D. Ky. Apr. 25, 2013).

Next, Matthews claims that Deputy Haag cautioned that she would be arrested if her protest continued and alleges that Roberts directed this ultimatum. However, Kentucky law contradicts this conclusion, because no county attorney holds the authority to order the sheriff to

9

effect an arrest. Ky. Rev. Stat. §§ 69.210 – 70.010 *et seq.* Rather, the county attorney provides legal advice. Although the sheriff may act in accordance with this advice, the decision belongs to him and is not legally caused by the county attorney.

Moreover, Matthews does not contest that she neither applied for nor received a permit to use the right-of-way. More importantly, she disputes neither that Deputy Haag was dispatched to the site of the protest based on a complaint call from a private citizen, nor that the Meade County Sheriff's Department had been instructed that no one had permission from the KDH to access the right-of-way for purposes of conducting a protest. (Docket No. 68-4 at 2.) Therefore, Matthews has not alleged sufficient facts to establish that but for Roberts's alleged actions, she would not have been arrested.

Turning to proximate cause, the Court considers whether it was "reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Powers*, 501 F.3d at 609. As discussed above, Matthews cannot demonstrate that her arrest resulted from Roberts's actions. The record reflects no activity in this case by Roberts herself except for her call to the KDH. Furthermore, there is no showing that Roberts advised law enforcement personnel that probable cause existed; rather, Judge Goff signed the arrest warrant without consulting Roberts. Matthews has not demonstrated causation under § 1983.

Because there is no direct relation between Matthews's asserted injury and the injurious conduct she alleges, she cannot satisfy the second *Bloch* element.

c. **Roberts did not act with a retaliatory motive in response to Matthews's protest.**

The final element of a First Amendment retaliation claim requires the plaintiff to show that "the adverse action was motivated at least in part as a response to the exercise of the

10

plaintiff's constitutional rights." *Bloch*, 156 F.3d at 678. Although Matthews alleges that Roberts was motivated by Matthews's comments criticizing Briana's treatment, she presents no evidence to support this claim. Moreover, Roberts can point to a number of nonretaliatory goals, including her receipt of a number of complaints regarding Matthews's improper presence on the right-of-way. (Docket No. 68-1 at 20.)

In sum, Matthews has not made out a prima facie claim for relief against Roberts under § 1983 for her First Amendment claims. Matthews has identified no evidence in the record from which a jury could infer that Roberts violated her First Amendment rights; instead, she merely offers malicious accusations and conclusory statements, pointing only to her own understanding of the circumstances.[1]

### III. Absolute prosecutorial immunity

Regardless, even assuming that Matthews had set forth the prima facie elements of a First Amendment claim, Roberts would nonetheless be immune from suit based on the doctrines of absolute and qualified immunity.

    **a. The application of absolute immunity depends on the prosecutor's function at the moment in question.**

Two kinds of immunities are recognized under § 1983. Most public officials are entitled only to qualified immunity, shielding them from damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). However,

---

[1] Moreover, in light of the foregoing analysis, Matthews is not entitled to injunctive relief on the merits, as she lacks standing to pursue such relief. *See, e.g., Mitchell v. City of Morristown*, 2012 WL 2501102, at *9 (E.D. Tenn. June 1, 2012); *accord, Miller v. Jones*, 483 F. App'x. 202 (6th Cir. 2012). Matthews has made no showing of future harm that would rise above the speculative level.

some officials perform "special functions" that entitle them to absolute protection from damages liability. *Id.* at 268-69. In such cases, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

The Supreme Court initially considered whether prosecutors should enjoy immunity in actions brought under § 1983 in *Imbler v. Pachtman*, 424 U.S. 409 (1976). The Court explained the rationale underlying prosecutorial immunity at common law, pointing to "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 422-23. The Court confirmed that the public policy rationale underlying the common law rule of immunity is also the foundation of absolute immunity for state prosecutors under § 1983. *Imbler*'s limited holding did not address the prosecutor's administrative or investigative roles: "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 430-31.

The Court elaborated upon the absolute immunity principle in *Burns v. Reed*, 500 U.S. 478 (1991). In *Burns*, a prosecutor appeared before a judge to seek a search warrant without disclosing that the plaintiff had "confessed" under hypnosis or that she had later abandoned this confession. After being exonerated, the plaintiff sued the prosecutor under § 1983. The prosecutor claimed that absolute immunity shielded her from such suit. The Court determined that the prosecutor enjoyed absolute immunity for his appearance in the courtroom to present evidence in support of the motion for a search warrant, as such activities were "intimately associated with the judicial phase of the criminal process" and "also connected with the initiation

and conduct of a prosecution." *Id.* at 492. The Court acknowledged that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart form the courtroom." *Id.* at 486. However, *Burns* concluded that the prosecutor's advice to law enforcement personnel during the investigative phase was cloaked only in qualified immunity: "Indeed, it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.* at 495.

The Supreme Court has established a functional approach for determining whether government officials enjoy absolute immunity or the more general standard of qualified immunity—that is, the Court must consider "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 486. "The question, then, is whether the prosecutors have carried their burden of establishing that they were *functioning* as 'advocates.'" *Buckley*, 509 U.S. at 274. State prosecutors enjoy absolute immunity for their conduct "in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Burns,* 500 U.S. at 479 (internal quotation marks and citations omitted).

Although the timing of the prosecutor's actions plays an important role in the Court's analysis, it does not comprise the entire inquiry. In *Buckley,* the Supreme Court determined that the prosecutors lacked probable cause to arrest or initiate judicial proceedings against the defendant. The Court characterized the prosecutors' role as "entirely investigative in character," explaining that "a prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274. *Buckley* clarified that a prosecutor will not necessarily enjoy absolute immunity for all of his actions after a probable

cause determination; even after probable cause has been established, a prosecutor who engages in "police investigative work" will be entitled to only qualified immunity. *Id.* at 274 n.5.

In sum, several principles govern the Court's consideration of immunity in the case at bar. First, a prosecutor enjoys absolute immunity when acting as an advocate. *See, e.g.*, *Imbler*, 424 U.S. at 430-31; *Burns*, 500 U.S. at 491; *Buckley*, 509 U.S. at 273-74; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Second, investigatory actions taken prior to the existence of probable cause are not entitled to absolute immunity—and even after the establishment of probable cause, actions unrelated to the advocacy role may not be protected. *Buckley*, 509 U.S. at 274 n.5. The Court's inquiry hinges upon whether she acts within the scope of her official duties as a prosecutor or is instead merely giving legal advice or investigating. *Howell*, 668 F.3d at 349 (citations omitted). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Id.* at 349-50 (citing *Ireland*, 113 F.3d at 1443). Finally, a prosecutor's decision to initiate a prosecution is subject to absolute immunity. *Imbler*, 424 U.S. at 431; *Buckley*, 509 U.S. at 273; *see also Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002).

> b. **Roberts enjoys absolute prosecutorial immunity for activities related to the issuance of the warrant and subsequent arrest.**

Roberts maintains that she was in no way involved with the arrest warrant at issue, (Docket No. 68-1 at 9); even assuming arguendo that Roberts was somehow involved, she nonetheless enjoys absolute prosecutorial immunity. The Sixth Circuit instructs that commanding an arrest can fall within the scope of a prosecutor's role as an advocate, entitling her to immunity. *See Howell v. Sanders*, 668 F.3d 344, 351, 352 (6th Cir. 2012). Here, as in *Howell*, a state judge reviewed a criminal complaint against Matthews and determined that

14

probable cause existed. Even assuming that Roberts was closely involved with this process, she would nonetheless enjoy immunity: "[A] prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Id.* at 351 (citing *Imbler*, 424 U.S. at 430-31; *Ireland*, 113 F.3d at 1446).

Moreover, while Roberts's contact with the KDH was arguably investigative and not subject to absolute immunity,[2] Matthews does not allege that the call itself violated her constitutional rights—nor can the Court conceive of a scenario in which it would. Therefore, Matthews has presented no compelling argument as to how any of Roberts's alleged actions surrounding the arrest could be deemed investigatory rather than prosecutorial. Accordingly, Roberts is entitled to absolute immunity from Matthews's claims.

## IV. Qualified immunity

Even were Roberts not entitled to absolute immunity, the Court holds in the alternative that she is entitled to qualified immunity for all of the actions of which Matthews complains. "In addressing civil rights claims brought under 42 U.S.C. § 1983, courts must always begin with the following question: who did the plaintiff sue, and in what capacity? This is an important question, as it determines what the plaintiff must prove, and what defenses are available." *Dilingham v. Millsaps*, 809 F. Supp. 2d 820, 834 (E.D. Tenn. 2011). The burdens of proof

---

[2] "A prosecutor performing an investigative function before she has probable cause to arrest a suspect cannot expect to receive the protection of absolute immunity." *Buckley*, 509 U.S. at 274 n.5.

> Investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. For example, a prosecutor who performs the investigative functions normally performed by a detective or police officer search as searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested is entitled only at most to qualified immunity.

*Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999) (internal quotations and citations omitted).

15

applicable to Matthews and the defenses available to Roberts vary based on the capacity question.

Matthews does not clearly specify the capacity in which she sues Roberts, but references her in the context of her official position. The Court will construe the complaint as a claim against Roberts in her official capacity as county attorney. *See Meade v. Fackler*, 2011 WL 43225, *2 (W.D. Ky. Jan. 6, 2011) (construing allegations against a government official with unspecified capacity as claims against defendants in their official capacities). In an abundance of caution and with the goal of providing a comprehensive analysis, the Court will also address Roberts's immunity in her personal capacity.

### a.  Official capacity

To the extent that Matthews has sued Roberts in her official capacity, she has simply sued Meade County. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Local governing bodies are considered "persons" within the meaning of § 1983 and can therefore be sued directly for monetary, declaratory, or injunctive relief. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 (1978).

The determination that Roberts defends this action in her official capacity fixes the applicable standard of liability. To establish *personal* liability, a § 1983 plaintiff must show only that the official acted under color of state law to cause the deprivation of a federal right. *Graham*, 473 U.S. at 166. However, a local government is not liable solely because it employs a tortfeasor. *Monell*, 436 U.S. at 690. Rather, "in an official-capacity action, the governmental entity is liable "only when the entity itself is a 'moving force' behind the deprivation.'" *Graham*, 473 U.S at 166, quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). "[I]t is

when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. To subject the local government to § 1983 liability, the official in question must be responsible for "establishing final governmental policy respecting such activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986).

Matthews's pleadings do not contain sufficient allegations that Meade County itself was the moving force behind her alleged deprivation. In the course of her many accusations, Matthews does not allege that that Roberts acted pursuant to an official policy or custom.[3] Having determined that Roberts did not violate Matthews's constitutional rights, the Court finds that Roberts is entitled to qualified immunity in her official capacity.

b. **Individual capacity**

Because Matthews at times indicates that she wishes to sue Roberts "as an individual" (Docket No. 1 at 1), the Court will also consider Roberts's individual capacity. Because Roberts is a public official who is being sued for the performance of her job duties, she is entitled to qualified immunity, shielding her from liability for monetary damages "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

Qualified immunity is a matter of law for the court. *Everson*, 556 F.3d at 494 (citations omitted). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[3] Matthews' previous filings reflect this principle. "Jessica Brown Roberts is a rogue county attorney acting illegally, acting outside of government: she does NOT reflect the county government to which she was elected . . . . She is NOT representative of her county government, her county government is not involved in this, her illegal acts put her outside of her county government." (Case 3:12-CV-00828, Docket No. 26 at 1-2.)

reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow*, 457 U.S. at 818). To resolve a government official's qualified immunity claims, the Court considers whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 567 (6th Cir. 1999). Unlike absolute immunity, the burden falls to the plaintiff to refute a properly-pleaded defense of qualified immunity. *Howell*, 668 F.3d 344 at 353 (citing *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999)). Roberts has properly raised qualified immunity in her motion for summary judgment.

As discussed above, Matthews, on whom the burden of defeating qualified immunity rests, has not demonstrated that Roberts violated her constitutional rights. Accordingly, her claims against Roberts are subject to qualified immunity and must be dismissed.

## CONCLUSION AND ORDER

The Court having found that there was no underlying constitutional violation, Meade County Attorney Jessica Brown Roberts cannot be held liable for Matthews's alleged injury. Therefore, Matthews cannot overcome Roberts's Motion for Summary Judgment, and Docket No. 68 is GRANTED. A appropriate order will issue.


cc: Counsel
    Elaine Matthews, *pro se*